J-A17031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HAROLD S. MACAULEY | |
| Appellant | No. 1843 EDA 2014 |

Appeal from the Judgment of Sentence June 3, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006025-2013

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:         **FILED JULY 22, 2015**

Appellant, Harold S. Macauley, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his bench trial convictions for harassment and disorderly conduct.[1] We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> On June 14, 2013, Appellant visited United Furniture Warehouse located in Holmes, Pennsylvania to pick up a set of bunk beds that his wife had ordered a few months prior. Mahmoud Eid, an employee of United Furniture, was working that day. When [Appellant] arrived at the store's warehouse, he produced a receipt for the furniture. The receipt bore a woman's name, so Mr. Eid asked [Appellant] to sign the receipt and produce his driver's license so that [Mr. Eid] could make a copy for the store's records.

_____

[1] 18 Pa.C.S.A. §§ 2709(a)(3) and 5503(a)(4), respectively.

[Appellant] refused to give his driver's license to Mr. Eid. [Appellant], angered by [Mr. Eid's] request, began to scream at Mr. Eid that [Appellant] "need[ed] his stuff."

[Appellant] then went to his car, and returned with his driver's license, which he then provided to Mr. Eid. Mr. Eid told [Appellant] that [Mr. Eid] was going to make a copy and would return and asked [Appellant] to wait while [Mr. Eid] went inside the warehouse. Appellant refused, and followed Mr. Eid into the warehouse, actually into the office area of the warehouse. Mr. Eid made several requests for [Appellant] to leave and warned him that if he didn't leave, [Mr. Eid] would call the police. Appellant continued to follow Mr. Eid, and Mr. Eid called the police.

The two began arguing, and [Appellant] exited the warehouse and told Mr. Eid, "you're going to feel sorry, asshole." Mr. Eid remained in the loading dock area of the warehouse with a co-worker, watching [Appellant]. [Mr. Eid] observed Appellant retrieve a gun from his car which he "slid to get ready for a shot." Upon observing this, Mr. Eid shut the warehouse door and called the police a second time. [Appellant] returned to the warehouse and knocked on the office door and told Mr. Eid that [Appellant] needed his license back. Mr. Eid told [Appellant] that [Mr. Eid] would return it after the police arrived.

[Appellant] testified at trial and admitted that he went to his truck and chambered a round in his gun. He said he felt threatened by Mr. Eid and maintained that Mr. Eid told [Appellant] that [Mr. Eid] would "kick his ass."

Thereafter, the police arrived on the scene and took statements from all involved. Appellant was placed under arrest and charged with terroristic threats, harassment and disorderly conduct.

(Trial Court Opinion, filed October 15, 2014, at 1-2). Procedurally, following a bench trial on June 3, 2014, the court convicted Appellant of harassment and disorderly conduct. On that same date, the court sentenced Appellant to a $150.00 fine for each count and ordered Appellant to stay away from

- 2 -

the warehouse. On July 3, 2014, Appellant filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

> WAS THE EVIDENCE INSUFFICIENT TO SUPPORT APPELLANT'S SUMMARY CONVICTION FOR HARASSMENT WHERE THERE WAS NO EVIDENCE THAT HE ENGAGED IN A COURSE OF CONDUCT TO ALARM OR SERIOUSLY ANNOY MR. EID WHICH COURSE OF CONDUCT SERVED NO LEGITIMATE PURPOSE?
>
> WAS THE EVIDENCE INSUFFICIENT TO SUPPORT APPELLANT'S SUMMARY CONVICTION FOR DISORDERLY CONDUCT WHERE THERE WAS NO EVIDENCE THAT HE, WITH INTENT TO CAUSE PUBLIC INCONVENIENCE, ANNOYANCE, ALARM OR RECKLESSLY CREATING A RISK THEREOF, CREATED A HAZARDOUS OR PHYSICALLY OFFENSIVE CONDITION BY ANY ACT WHICH SERVED NO LEGITIMATE PURPOSE?
>
> ALTERNATIVELY, WAS APPELLANT'S SENTENCE FOR THE HARASSMENT CONVICTION ILLEGAL SINCE IT MERGED WITH HIS CONVICTION FOR DISORDERLY CONDUCT?

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Gregory M. Mallon, we conclude Appellant's issues one and two merit no relief. The trial court opinion comprehensively discusses and properly disposes of those issues. (**See** Trial Court Opinion at 3-5) (finding: **(1)** Appellant followed Mr. Eid into warehouse and office, despite being told repeatedly not to do so; Appellant followed Mr. Eid without any legitimate purpose and with intent to

- 3 -

threaten Mr. Eid; evidence was sufficient to support harassment conviction;

**(2)** Appellant retrieved and chambered gun in public place, without legitimate purpose and with intent to cause public inconvenience, annoyance and alarm; evidence was sufficient to support disorderly conduct conviction). Accordingly, as to Appellant's issues one and two, we affirm on the basis of the trial court opinion.

In his third issue, Appellant argues the harassment sentence is illegal because it should have merged with disorderly conduct for sentencing purposes. Appellant asserts merger is appropriate because identical facts supported both convictions and all of the elements of harassment are included in the elements of disorderly conduct. Appellant concludes this Court should vacate his judgment of sentence. We disagree.

The Pennsylvania Crimes Code defines the crime of harassment in pertinent part as follows:

> **§ 2709. Harassment**
>
> **(a)  Offense defined.**—A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
> *    *    *
>
> (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]

18 Pa.C.S.A. § 2709(a)(3). Disorderly conduct is defined in relevant part as follows:

> **§ 5503.  Disorderly conduct**

- 4 -

**(a) Offense defined.—**A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

* * *

**(c) Definition.—**As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, **places of business** or amusement, any neighborhood, or **any premises which are open to the public**.

18 Pa.C.S.A. § 5503(a)(4) and (c) (emphasis added).

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Quintua***, 56 A.3d 399, 400 (Pa.Super. 2012), *appeal denied*, 620 Pa. 730, 70 A.3d 810 (2013) (citing ***Commonwealth v. Allen***, 24 A.3d 1058, 1062 (Pa.Super. 2011)). Whether two offenses merge for sentencing now turns on Section 9765 of the Sentencing Code, which addresses merger and provides:

**§ 9765. Merger of sentences**

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act **and** all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes

> merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765 (emphasis added).

Instantly, a conviction for harassment requires a person to: (1) intend to harass, annoy or alarm another person; and (2) engage in a course of conduct or repeatedly commit acts that serve no legitimate purpose. **See** 18 Pa.C.S.A. § 2709(a)(3). On the other hand, to commit disorderly conduct, a person must: (1) intend to cause a public inconvenience, annoyance or alarm, or recklessly create a risk thereof; and (2) create a hazardous or physically offensive condition by any act which serves no legitimate purpose. **See** 18 Pa.C.S.A. § 5503(a)(4). The plain language of the respective statutes demonstrates merger is inappropriate. Harassment, unlike disorderly conduct, requires actions or conduct directed at another person. Disorderly conduct, however, requires a person to create a hazardous or physically offensive condition, an element that harassment lacks. As each offense requires proof of an element that is absent from the other offense, Appellant's convictions do not merge for sentencing.[2] **See** 42 Pa.C.S.A. § 9765. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

[2] Appellant's reliance on **Commonwealth v. Whetstine**, 496 A.2d 777 (Pa.Super. 1985), is misplaced. Merger law has evolved substantially since the time that case was decided. Instead, Section 9765 and the "elements" approach to merger govern Appellant's issue.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/22/2015</u>

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA | NO.     6025-13

v.

HAROLD S. MACAULEY

## OPINION

*Mallon, J.*                                              *Filed:* 10-15-14

Appellant, Harold Macauley, was sentenced to a $300 fine and ordered to stay away from United Furniture in Holmes, Pennsylvania after this court found him guilty of harassment and disorderly conduct. Appellant appeals to the Superior Court from the judgment of sentence entered by this court on June 3, 2014. The nature and history of the case are as follows:

### I. Nature and History of the Case

On June 14, 2013 Appellant visited United Furniture Warehouse located in Holmes, Pennsylvania to pick up a set of bunk beds that his wife had ordered a few months prior. Mahmoud Eid, an employee of United Furniture, was working that day. When the Appellant arrived at the store's warehouse[1], he produced a receipt for the furniture. N.T., 6/3/14, p. 8. The receipt bore a woman's name, so Mr. Eid asked the Appellant to sign the receipt and produce his driver's license so that he could make a copy for the store's records. *Id.* at 9. The Appellant refused to give his driver's license to Mr. Eid. *Id.* The Appellant, angered by this request, began to scream at Mr. Eid that he "need[ed] his stuff." *Id.* at 13.

The Appellant then went to his car, and returned with his driver's license, which he then provided to Mr. Eid. *Id.* at 13. Mr. Eid told the Appellant that he was going to make a copy and would return and asked the Appellant to wait while he went inside the warehouse. *Id.* at 14.

---

[1] The warehouse is several miles away from the retail store.



Appellant refused, and followed Mr. Eid into the warehouse, actually into the office area of the warehouse. *Id.* at 33-35. Mr. Eid made several requests for him to leave and warned him that if he didn't leave, he would call the police. *Id.* Appellant continued to follow Mr. Eid and Mr. Eid called the police. *Id.*

The two began arguing, and the Appellant exited the warehouse and told Mr. Eid, "you're going to feel sorry, asshole." *Id.* at 14-17. Mr. Eid followed behind Appellant, and observed him go to his car. *Id.* at 15. Mr. Eid remained in the loading dock area of the warehouse with a co-worker, watching the Appellant. *Id.* at 15. He observed the Appellant retrieve a gun from his car which he "slid to get ready for a shot." *Id.* at 18. Upon observing this, Mr. Eid shut the warehouse door and called the police a second time. *Id.* The Appellant returned to the warehouse and knocked on the office door and told Mr. Eid that he needed his license back. *Id.* at 19. Mr. Eid told Appellant that he would return it after the police arrived. *Id.* at 20.

The Appellant testified at trial and admitted that he went to his truck and chambered a round in his gun. *Id.* at 68. He said he felt threatened by Mr. Eid and maintained that Mr. Eid told him that he would "kick his ass." *Id.* at 81-82.

Thereafter, the police arrived on the scene and took statements from all involved. *See* Exhibit D-3. Appellant was placed under arrest and charged with terroristic threats, harassment and disorderly conduct. Following a trial before this court, Appellant was found guilty of harassment and disorderly conduct.[2] The court ordered that Appellant stay away from the warehouse and fined him $300. On July 3, 2014, Appellant filed a notice of appeal. Appellant raises the following issue in his Concise Statement of Matters Complained of on Appeal:

> The evidence presented by the Commonwealth was legally insufficient to support the defendant's conviction for harassment, a violation of 18 Pa.C.S. §2709(a) (3) and for

---

[2] The Commonwealth withdrew the misdemeanor charge in order to proceed with a bench trial.

2

disorderly conduct, a violation of 18 Pa.C.S. §5503(a) (4).

## II. Discussion

Appellant challenges the sufficiency of the evidence for his convictions of harassment and disorderly conduct. In determining whether the evidence is sufficient to support a conviction, the reviewing court will consider the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. If the court finds, based on that review, that the jury could have found every element of the crime charged beyond a reasonable doubt, then it must sustain the defendant's conviction. *Commonwealth v. Murphy*, 577 Pa. 275, 284, 844 A.2d 1228, 1233 (2004) (citations omitted). In rendering its verdict, the jury is free to believe all, part, or none of the evidence presented at trial. *Commonwealth v. Sullivan*, 864 A.2d 1246, 1249 (Pa. Super. 2004). Furthermore, it is up to the jury, sitting as the finder of fact, to make all credibility determinations. *Commonwealth v. Thompson*, 934 A.2d 1281, 1285 (Pa. Super. 2007).

### (a) Harassment

Appellant first challenges his conviction of harassment. Under the law of Pennsylvania, A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose. 18 Pa.C.S.A. §2709(a) (3).

It is respectfully submitted that the evidence presented at Appellant's trial was more than sufficient to find every element of this crime beyond a reasonable doubt. It was established at trial that Appellant followed Mr. Eid into his office in the warehouse despite being repeatedly being told not to by the Mr. Eid, the Appellant threatened Mr. Eid that: "you're going to feel sorry, asshole", and shortly after doing this, he chambered a round in the firearm located in his

3

times to remain outside, and chambering a round then brandishing the loaded gun, he created a hazardous or physically offensive conduction by any act which serves no legitimate purpose of the actor. Alarmed by his observations, Mr. Eid called the police. Based on the aforementioned facts, this court ultimately found that the Appellant's conduct created a condition which involved danger and risk which served no legitimate purpose. 18 Pa.C.S. §5503(a)(4). *See Commonwealth v. Young*, 535 A.2d 1141, 1143 (Pa. Super. 1988) ("In Pennsylvania the crime of disorderly conduct embraces activity which disturbs the peace and dignity of a community"). This court submits that there was ample evidence to find each element of the crime of disorderly conduct beyond a reasonable doubt.

All that the Appellant had to do that day, as Mr. Eid said, was to allow Mr. Eid to make a copy of the Appellant's driver's license and the purchase receipt and wait while this was done. Once done, as Mr. Eid said, the Appellant would have gotten the furniture purchased by his wife.[4]

### III. Conclusion

In light of the aforementioned, this court respectfully requests that Appellant's appeal be denied and his judgment of sentence affirmed.

BY THE COURT:

_____
GREGORY M. MALLON, J.

---

[4] This court believes that such request is reasonable and normal business practice necessary to protect the merchant and the customer.